McFALL v. SULLIVAN.

1. A testator specified and valued the property at that time and previously given to his children, and devised and bequeathed the balance of his property to his wife for life, and after her death to be appraised in lots and "the property taken into the general estimate and divided accordingly." He further directed that "on a final settlement of my estate, that each legatee get the same, and in the division, if it so happen that one gets more than another, that he have one year without interest to refund it in, except C., who I give $500 more than any of the rest."

April Term, 1882.

*Held*, that none of the children were required to account for advancements.

2. Inequality in the advancements cannot raise an inference of an intention contrary to that expressed in the will.

Before FRASER, J., Greenville, November, 1881.

This was an action by Jane C. McFall and others, children of John C. Sullivan, deceased, against William E. Sullivan, administrator of J. C. Sullivan and others, legatees and devisees under the will of the said J. C. Sullivan, commenced in 1881, for a settlement of the estate of the testator. The case depended upon the construction of the following will:

In the name of God, amen, I, John C. Sullivan, of the District of Greenville and State of South Carolina, being of sound mind and memory, and considering the uncertainty of life, do make, ordain, publish and declare this to be my last will and testament. That is to say:

First. After all my debts are paid, the residue of my estate, real and personal, I give, bequeath to, and dispose of as follows: I have given all my children something but my daughter Clarissa, who I now give eleven negroes, Sam, Ann and her two children, Dennis and Cinda and their five children, together with their future increase, during her life, and at her death to her children. Also, one tract of land containing three hundred and eighty-one acres, consisting of a part of the tract I bought of Joseph Sullivan, and the part of the Martin tract which I purchased, and which was laid off for my daughter Elizabeth, but she moved off and left it. One horse, saddle and bridle, with two beds and furniture, on which I have put the estimate of seven thousand five hundred dollars, which she is to hold during her life, and should she die without lawful heirs, or if heirs, and they should not live to become of age, then this property to be returned unto me if living, and if dead, unto my estate to be disposed of as my other property to my living children, or their legal representatives. I have already given my son John Dunklin Sullivan in land, negroes, stock and trade, horses, cattle, hogs, tools, both plantation and blacksmith's, amounting in all to five thousand eight hundred

and fifty-six dollars, which can be seen by reference to my book of charges against my children; and, whereas, the stock I put in with him in the Grove store turned out to be an unprofitable concern after deducting what I and my family have taken out of it, I release and give up to him any balance of interest I may have to him without any charge for the same. I have already given my daughter Sarah F. Agnew, in negroes, cattle, one mare, household and kitchen furniture, provisions, with five hundred dollars in money, making in all four thousand and eighty-three dollars, which can be seen by reference to my book of charges against my children. I have given my daughter Temperance E. Agnew, in negroes, cash, mules, cattle, hogs, household and kitchen furniture, with provisions, in all making the sum of forty-seven hundred and twenty-nine dollars, which can be seen by reference to my book of charges against my children. I have already given to my daughter, Jane C. McFall, in negroes, one horse, cattle, household and kitchen furniture, with provisions, making in all forty-three hundred and sixty-nine dollars, which can be seen by reference to my book of charges against my children. I have already given my daughter Emma A. Hardin, in negroes, cash, one horse, beds and furniture, the sum of forty-five hundred and sixty-five dollars, which can be seen by reference to my book of charges against my children.

Whereas, my daughter Martha Ann H. Sullivan married in 1855 with Adam L. Eichelberger and died the same year, after giving birth to a child, which died in January, 1856; I loaned them eight negroes with the express understanding that when I came to Florida in the fall I was to deed it in trust to my daughter, as I had the property of my other married daughters, but she died before I reached there, and Eichelberger refuses to give up the property, I intend instituting a suit against him, and if I do not live to carry it out, I set aside one thousand dollars, to be used by my executor in carrying out said suit in endeavoring to recover back said property; and for the base and unprincipled manner in which the said Eichelberger has acted, I leave him one cent as what I design for him out of my estate, and no more.

The balance of my property of which I may die in posses-
sion, I leave to my wife during her life—all my slaves, lands,
except the Florida lands, stock of every kind, crop, plantation
and blacksmith tools, wagons and carriages, debts due me, all
the household and kitchen furniture, except two beds and fur-
niture for Clara, the dividend on my stock in the Hamburg
Bank, every other species of property of which I may die
possessed, after carrying out the other provisions of this my
will.

Should my wife survive me, at her death I wish my prop-
erty appraised in lots, and taken by my children, Sarah's and
Temperance's children each to draw a full share, to go into the
hands of their mother's trustee, to be given up to them by him
when they become of age; and should any of them die before
they arrive of age, the others to take its interest, and if both die
of either set, then the property to be taken into the general
estimate and divided accordingly.

As soon after my death as convenient, I desire my executor
to have the will proven and qualify; have all the property
appraised, and if he cannot collect enough out of the debts due
me, with the crop, to pay my liabilities, he must sell enough
to meet the debts; and if they cannot agree on a division after
my wife's death, these will empower him to sell all or any part
either personal or real estate, and execute bills of sale and deeds
of land; and it is my desire on a final settlement of my estate,
that each legatee get the same, and in the division, if it so hap-
pen that one gets more than another, that he have one year
without interest to refund it in, except Clarissa, who I give
five hundred dollars more than any of the rest. It is my de-
sire that my son John D. Sullivan settle up our copartner
farm in Florida. Should any of my children murmur or ex-
press any dissatisfaction at the disposition I have made of my
property, I wish it expressly understood that they be cut off
without anything more than they have already received. I
desire no sale of anything, but valued and taken by my chil-
dren. I likewise appoint, make and constitute my son John
D. Sullivan executor of this my last will and testament.

In witness whereof, I hereunto subscribe my name and affix

my seal, this the 7th day of January, eighteen hundred and fifty-seven.

JOHN C. SULLIVAN, [L. S.]

Signed in presence of
S. S. LANDERS,
W. T. SHUMATE,
HEWLET SULLIVAN.

The Circuit decree was as follows:

I concur with the Master in his finding of facts that the eleven (11) slaves mentioned in the will as given to testator's daughter Clarissa (now Mrs. Cannon) went into her possession as her property during the lifetime of testator, and were not a part of his estate at his death. I do not regard this fact, however, as at all important. The language in which this gift to Clarissa is made imports not a gift *in futuro* to take effect at death, but a gift *in præsenti* to take effect *immediately*. Testator says as to his other children, I *have given*, and as to Clarissa, I *now give*, and if *she dies in his lifetime* the property to *come back to himself* in certain contingencies. I am not sure that so much of this instrument is not a deed instead of a will. See Jarman on Wills (Jersey City Edition, 1880), *26, where it is said that there is no objection to one part of an instrument operating *in præsenti* as a deed and another *in futuro* as a will. If either by the words of the instrument itself or by any act of giving away this property after the execution of the will the title passed out of John C. Sullivan in his lifetime, it was no part of his estate and could not be included in any general words simply describing *his estate*. And if the will had directed that all the children should be made equal in the division of the whole property, that which had been given away and which thus passed out of the operation of the will could not be properly taken into the estimate. It is true that testator may refer in his will to such previous gifts, or even to some arbitrary standard of value as a guide in the distribution of his estate, but such directions must be plainly given in the will, and are not found in this instrument.

Again, I do not think it will change the situation if we hold

that the property given to Clarissa passes under this instrument as a will, and did not come into her possession until after the death of John C. Sullivan, the testator. The gifts are specific even as to the real and personal property given to Clarissa, and unless controlled by the subsequent clause, are no part of the residue, or to be taken into any account with it on the final division. I do not think that this will can be properly construed so as to require the gifts to the other children, admitted to have been *inter vivos*, and these gifts to Clarissa, whatever they may be, to be taken into the account in making the children *equal*. The direction in the will is, "It is my desire, on a final settlement of my estate, that each legatee get the same, and in the *division* if it so happen that one gets more than another that he have one year without interest to refund it, except Clarissa, who I give five hundred dollars more than any of the rest." The equalization is to be made on " a *final settlement* " and in *the division* then made.

A division can be made only of property in which the parties are interested as joint-tenants or tenants in common, and there is no such interest in any of the other gifts to the children referred to. This clause stands by itself in the will and speaks for itself, and has no necessary reference to the other gifts. If the gifts to Clarissa in the previous part of the will are to be taken into the account in equalizing the shares, there is no reason why she should not be required to pay back a portion of the value ($7500) if on final division the other children do not receive sufficient to bring them within $500 of that amount. If she is to account for the gifts for one purpose, she must do so for all, and this is clearly not the intention of the testator as expressed in the will. If the testator intended these specific gifts to be brought into the account on final settlement, he would have expressed his purpose in plain language, and not used language which points to a different conclusion.

This is a case to which the doctrine of advancements does not apply. The loss of property in slaves is a common loss, and the estate must now be settled in the same way as if there had been a loss to this extent from any other cause. The share of each child in this property will now go to him or her, or to

his or her representatives to be divided amongst them, and Sarah's children will take one share amongst them and Temperance's children one share amongst them. This I take is the proper construction of the will, *one* full share to Sarah's children and *one* full share to Temperance's children.

It is therefore ordered and adjudged that out of the net proceeds of the sale of the land heretofore ordered to be sold in this case there be paid to Clarissa (now Mrs. Cannon) one full share and the sum of five hundred dollars, to Sarah's children one full share amongst them, to Temperance's children one full share amongst them, one full share to each of the other children of the testator, and where any of them have died, to their representatives as set out in the complaint.

Certain of the heirs of the testator appealed from this decree, upon the single ground that there was error in so much of this decree as holds that the will of John C. Sullivan, deceased, cannot be properly so construed as to require that the gifts to his children, including those to his daughter Clarissa, be taken into account in making his said children equal under the provisions of said will.

Messrs. *Wells & Orr*, for appellants.

Messrs. *T. Q. Donaldson, M. F. Ansel*, contra.

July 28, 1883.—The opinion of the court was delivered by

Mr. Chief Justice Simpson.—Dr. Jno. C. Sullivan, late of Greenville County, died in 1864, leaving a last will and testament, in which, after providing for the payment of his debts, and stating that he had already given all of his children something, except his unmarried daughter Clarissa, afterwards Mrs. Cannon, he then proceeds to give her certain property consisting of slaves and a tract of land containing 381 acres, and some other personal property, which in all he valued at $7500, upon certain terms and conditions. This bequest was referred to in the will as if the testator intended it as a gift in *prosenti*. He then enumerates the property previously given off to his other children, ranging from $4800 to $5000 to each, closing

as to each with these words : " which can be seen by reference to my book of charges against my children."

After some other unimportant directions, he leaves all the balance to his wife for life, directing that upon her death his property should be appraised in lots and taken by his children, the children of his two deceased daughters, Sarah and Temperance, each to draw a full share among them ; but if they could not agree on a division, his executors were empowered to sell all or any portion for that purpose, expressing his wish that upon a final settlement that each legatee should get the same, further directing " that if in the division it should so happen that one gets more than another, that he should have one year without interest to refund, except Clarissa, to whom he gave $500 more than the rest."

His son, Jno. D. Sullivan, was appointed executor, who, after partially administering the estate, died, and William E. Sullivan, a son of John D., administered with the will annexed, *de bonis non.* W. A. McDaniel administered upon the estate of John D. The estate of Dr. Sullivan not having been settled, this proceeding was instituted for an accounting between the estate of the former executor, John D. Sullivan, and that of Dr. Sullivan, for the sale of the real estate of Dr. Sullivan, and for final settlement according to the rights of the parties.

The only serious question in the case is as to the liability of the children and especially of Mrs. Cannon to account for the property received by them as advancements. The case was referred to a referee to take the testimony, who reported as to Mrs. Cannon, that she went into the possession of the property bequeathed to her in the will previous to the death of her father. He also reported the amounts received by the others. The presiding Judge decreed that the settlement should be made without regard to the previous gifts, and that this should apply to Clarissa as well as to all the others, and this, too, whether Clarissa took her part under the will at the death of her father, or as a gift previous to his death. He held that there was to be no accounting. The appeal raises the question whether there was error in this ruling.

It was said in the case of *McDougald* v. *King, Bail. Eq.*

154, that the law on the subject of advancements applies onle to cases of intestacy. This is without limitation, except where the children have been advanced after the making of the will. Then it may be made a question whether such advancements are not to be taken in satisfaction of legacies given in the will, and especially will this be done if the advanced party consents to bring in his advancements. The doctrine of accounting for advancements as a legal principle comes from the statute, *Genl. Stat.* 440, and it applies exclusively to cases of intestacy. *Allen* v. *Allen*, 13 *S. C.* 513. But still it has never been denied that a testator might regulate the disposition of his property as he deemed best, so that in so doing he violated no established principle of law. Within this limit he can make his own law as to his own property, and the courts will respect and enforce it. In *Allen* v. *Allen, supra*, Mr. Justice McIver said: "The doctrine of advancements applies only to cases of intestacy, or when directed by the will."

Dr. Sullivan died testate, so that the question involved here must be determined upon the construction of his will. Did he intend that his children should account? and does that intent appear? There is certainly nothing in the will which directs such accounting in express terms, and if he had intended this, it is somewhat singular that the testator did not so declare in unmistakable language. He was evidently a man of more than ordinary intelligence. He had a large estate to dispose of, and no doubt knew full well how to express intelligently his purposes in reference thereto, and yet the will is silent as to any positive direction on that subject. This is a significant fact, and should have influence in endeavoring to reach the intent of the testator, which, as is often said, is the pole-star in the construction of wills. Can such intent be fairly inferred from the whole will, or from any portion of it?

The only portions of the will that refer to the division of his property among the children are the last two clauses. In the first of these two, after having given the balance of his property to his wife, he directs that, should his wife survive him, at her death it is his wish that his property be appraised in lots and be taken by his children. What property did he refer

to in this clause? Evidently, that taken by his wife for life. He had none other undisposed of. After enumerating in his will the portions given off to all of his children, including that given to Clarissa, he then gave the entire balance of his estate to his wife during her life, and proceeds to direct that at her death *his property* should be appraised in lots, for his children.

Could any other property have been appraised and divided into lots except that in which he had reserved the power to dispose of, after the death of his wife? Could the executors, with the view to equalize these lots, have required the advanced children to bring into *hotchpot* their advancements? They certainly had no such power. The will was their guide and warrant of authority, and this gave them power only over such property as he might die possessed of with a life estate in his wife. This they were directed to appraise into lots for division, and having performed this, their powers and duties ended so far as this clause is concerned.

In the last clause the testator contemplated the possibility that the children might not agree on a division at the death of his wife. In such case he empowered his executor to sell all or any portion, either personal or real, to that end, expressing a desire that upon "final settlement each legatee shall get the same;" and in the division, if it should so happen that one legatee gets more than another, that he shall have one year without interest to refund it in, "except as to Clarissa, to whom he gave $500 more than the rest."

In these two clauses the testator seems to refer entirely to the property left in the hands of his wife for life. This was to be divided equally, either by appraisement and allotment of the property itself as a whole, if that could be done, otherwise by sale in whole or in part, as the necessities of the case might require. We see nothing in the language of either clause, or in the general scheme, which either by necessary implication or reasonable inference leads us to believe that the testator intended to embrace in this last division any of the property previously given off to any of his children.

The inequality of the previous advancements cannot raise

such an inference.    Testators have the right to dispose of their property as they may see fit, and while it is usual for parents to give each child an equal share, yet there is no law which requires this.    Nor when a departure is made can any one demand the reason.    No one but the parent himself knows the different advantages which have been received by his children respectively, the different services rendered by each, or the future necessities to be provided for.    The law, therefore, wisely leaves all this to him, and to that parental attachment, which is universal, and which is the safest guaranty to parental justice.    The law seeks only to know the intent.    When that is reached by the proper application of the legitimate canons of construction, whatever this may be, if not inconsistent with well-established principles, the law will protect and enforce.

Seeing nothing in the will either express or necessarily implied which authorizes the construction that the testator intended that his children should account, and this being a case of testacy, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.